UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENERAL SUPPLY & SERVICES, INC., <br><br>Plaintiff, <br><br>v. <br><br>ACTION SERVICES GROUP, INC., <br><br>Defendant. | Case No. 15-cv-00587-MEJ <br><br>**ORDER RE: MOTION TO STRIKE; MOTION TO DISMISS** <br><br>Re: Dkt. Nos. 29, 30 |

## INTRODUCTION

This is a collection case by Plaintiff General Supply & Services, Inc. ("Gexpro") against Defendant Action Services Group, Inc. ("Action"), based on an agreement for Gexpro to sell lighting and related equipment to Action, a lighting contractor. Action has filed a Third Party Impleader Complaint under Federal Rule of Civil Procedure ("Rule") 14 against Defendant Safeway, Inc., based on Action's agreement to provide lighting services for Safeway's grocery stores. Dkt. No. 15 ("Action Compl."). Safeway now moves pursuant to Rule 12(b)(6) to dismiss Action's third claim for "interference with contract and inducing breach" and the fourth claim for express indemnity. Dkt. No. 30. Safeway has also filed a Motion to Strike pursuant to Rule 14(a)(4), which it states should only be considered if the indemnity claim is dismissed. Dkt. No. 29. The Court finds these matters suitable for disposition without oral argument and VACATES the June 25, 2015 hearing. *See* Fed. R. Civ. P. 78(b); Civil L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **DENIES** Safeway's Motion to Dismiss for the reasons set forth below. Safeway's Motion to Strike is therefore **DENIED AS MOOT**.

**BACKGROUND**

**A.     Gexpro's Claims Against Action**

Gexpro filed this case against Action on December 31, 2014 in Alameda County Superior Court.  Am. Not. of Removal, Ex. A (Gexpro Compl.), Dkt. No. 4.  Gexpro alleges that it entered into a series of oral contracts with Action.  *Id.* ¶ 8.  Under the contracts, Gexpro supplied Action with lighting supplies, electrical equipment, and related materials on an open book or credit basis.  *Id.*  Gexpro alleges that Action's payments were due within 30 days of Action receiving Gexpro materials.  *Id.*  The oral contracts between Gexpro and Action were confirmed in writing by Gexpro's quotations, Action's purchase orders, and Gexpro's invoices.  *Id.* ¶ 9.  Although Gexpro sold and delivered the subject materials to Action, it alleges that Action breached the contracts as of November 21, 2014 by failing and refusing to make timely payments.  *Id.* ¶¶ 10, 12.  Gexpro alleges that Action owes $375,544.39.  *Id.* ¶ 13.  It brings claims for breach of contract (first claim), for goods sold and delivered (second), for an open book account (third), and for an account stated (fourth).  *Id.* ¶¶ 7-26.

Action removed the case to this Court on February 6, 2015 (Dkt. No. 1), and filed its Answer on February 13, 2015 (Dkt. No. 5).  In its Answer, Action admits: (1) that it entered into a series of oral contracts with Gexpro through which Gexpro supplied lighting supplies, electrical equipment, and related materials to Action (Answer ¶ 8); that the contract terms between Gexpro and Action were confirmed by written quotations, purchase orders, and invoices (*id.* ¶ 9); and that Gexpro sold and delivered materials to Action (*id.* ¶ 10).  Action denies that it agreed to pay Gexpro for all materials within thirty days.  *Id.* ¶ 8.

**B.     Action's Claims Against Safeway**

On April 2, 2015, Action filed its Amended Third Party Complaint against Safeway.[1]  In its complaint, Action alleges that it entered into a written June 23, 2014 "Master Agreement"[2] with

---

[1] Action's original third party complaint was filed February 13, 2015.  Dkt. No. 6.
[2] Both parties have requested that the Court take judicial notice of the Master Agreement, which Action included with its original Third Party Complaint.  *See* Dkt. No. 6-3 (Master Agreement).  The Court GRANTS the parties' requests.  *See Inlandboatmens Union of Pacific v. Dutra Grp.*, 279 F.3d 1075, 1083 (9th Cir. 2002).

Safeway under which it agreed to provide Safeway with "lighting services." Action Compl. ¶ 11. The Master Agreement required Action to purchase lighting materials from Safeway's chosen material supplier, Gexpro. Action Compl. ¶ 13; Master Agreement § 2.1.

Action alleges that Safeway stopped paying Action's invoices in October 2014, but Action continued to perform under the Master Agreement for several months without payment. Action Compl. ¶¶ 15, 17, 29. About this same time, Action alleges that Gexpro refused and delayed the processing of warranty and return items from the Safeway lighting materials, and failed to credit Action's account for Safeway warranties and returns. Action Answer ¶¶ 28, 31, 37. On or about December 2014, Safeway terminated the Master Agreement, using Gexpro's credit hold as a basis for termination. Action Compl. ¶ 34.

Action brings claims for breach of contract, misrepresentation, interference with contract, express indemnity, and quantum meruit. *Id.* ¶¶ 10-45. It alleges that Safeway owes $306,404.00 for breach of contract, $504,000.00 for a contractual termination fee, and $140,000.00 for "additional labor." *Id.*, Prayer for Relief.

Safeway filed the present Motions to Dismiss and Strike on May 8, 2015. Action filed Oppositions to the Motion to Dismiss (Dkt. No. 35) and the Motion to Strike (Dkt. No. 36), and Safeway has filed a Reply in support of its Motion to Dismiss (Dkt. No. 40) and a Reply in support of its Motion to Strike (Dkt. No. 39). In its Motion to Dismiss, Safeway seeks dismissal of Action's third claim for "interference with contract and inducing breach," arguing that it is defeated by (1) Action's own admissions in its Answer that Gexpro fulfilled Action's orders for equipment and supplies, and (2) because there are no allegations that Safeway prevented Gexpro or Action from performing their respective duties to each other. Mot. at 1. Safeway also moves to dismiss Action's fourth claim for express indemnity, arguing that Safeway did not have a contract with Gexpro, nor did it guarantee that Action would pay its bills. *Id.*

### LEGAL STANDARD

Under Rule 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face."

1  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facial plausibility standard is not a
2  "probability requirement" but mandates "more than a sheer possibility that a defendant has acted
3  unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations
4  omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual
5  allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the
6  non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.
7  2008).  "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of
8  sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*,
9  534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v.
10 Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the
11 basis of a dispositive issue of law.").

12       Even under the liberal pleading standard of Rule 8(a)(2), under which a party is only
13 required to make "a short and plain statement of the claim showing that the pleader is entitled to
14 relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of
15 a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).
16 "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to
17 dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652
18 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply
19 recite the elements of a cause of action, but must contain sufficient allegations of underlying facts
20 to give fair notice and to enable the opposing party to defend itself effectively").  The court must
21 be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged."
22 *Iqbal*, 556 U.S. at 663.  "Determining whether a complaint states a plausible claim for relief . . .
23 [is] a context-specific task that requires the reviewing court to draw on its judicial experience and
24 common sense." *Id.* at 679.

25       If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no
26 request to amend the pleading was made, unless it determines that the pleading could not possibly
27 be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en
28 banc) (internal quotation marks and citations omitted).  However, the Court may deny leave to

amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## DISCUSSION

### A.   Third Cause of Action: "Interference with Contract and Inducing Breach"[3]

In support of its "Interference with Contract" claim, Action alleges that Safeway intended to interfere with the contractual relationship between Action and Gexpro by withholding invoice payments to Action. Action Compl. ¶ 32. Action maintains Safeway knew that its non-payment would result in Action's inability to pay for the materials supplied to Safeway stores. *Id.* ¶ 31.

Safeway argues there is no possible third party breach by Gexpro because Action admits that Gexpro performed its obligations by delivering equipment to Action on request. Mot. at 5-6 (citing Action Answer at ¶¶ 8-10; Action Compl. ¶¶ 26-27). In response, Action argues that Safeway intended to disrupt Action and Gexpro's contractual relationship, and in fact did cause a disruption. Opp'n at 5. Action contends that Safeway "systematically, and intentionally accepted large quantities of lighting materials into its stores, without providing any payment to Action," and that its "non-payment . . . appeared intentional, and designed to interfere and disrupt Action's business relationship with the known material supplier." *Id.* at 7 (citing Action Compl. ¶¶ 31-32).

California courts have long held that a stranger to a contract may be liable in tort for intentionally interfering with the performance of the contract. *Imperial Ice v. Rossier*, 18 Cal. 2d 33, 39 (1941). The elements which a plaintiff must plead to state a claim for intentional

---

[3] Although pled as one cause of action, Safeway argues that Action has actually pled two separate claims: (1) Inducing Breach of Contract and (2) Intentional Interference with Contractual Relations. Mot. at 5. Unlike the tort of inducing breach of contract, which requires proof of a breach, the tort of interference of contractual relations only requires proof of interference. *Shamblin v. Berge*, 166 Cal. App. 3d 118, 122-23 (1985). While Action's claim for interference with contract and inducing breach could be read as two separate claims, Action asserts only one claim, and its Opposition, focuses solely on the elements "of a claim for tortious interference with contractual relations," with no discussion of a claim for inducing breach. Opp'n at 5. Action does not now seek leave to add a separate claim for inducing breach. Accordingly, the Court shall construe Action's claim as one for interference with contractual relations.

interference with contractual relations are: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *PG&E v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990). The California Supreme Court has recognized that a plaintiff need not allege an actual or inevitable breach of the contract in order to state a claim for disruption of contractual relations; mere interference with the plaintiff's performance may give rise to a claim for interference with contractual relations if plaintiff's performance is made more costly or burdensome. *Id.* at 1129.

The facts alleged in Action's Complaint, which for the purposes of a motion to dismiss must be regarded as true, allege that Safeway intentionally interfered with a contractual relationship, and that such interference resulted in substantial damage to Action. Specifically, the Complaint alleges (1) a contractual relationship between Action and Gexpro (Action Compl. ¶ 26); (2) Safeway's express knowledge of the relationship (*id.* ¶¶ 25, 30); (3) Safeway's intentional act (non-payment of invoices) designed to disrupt the contractual relationship by creating an inability for Action to keep current with Gexpro's material costs (*id.* ¶ 31); (4) disruption of the relationship (*id.* ¶ 32); and (5) resulting damages (*id.* ¶ 33).

Despite these allegations, Safeway argues that Action cannot establish such a claim because it admits receiving Gexpro equipment and not paying for it. Mot. at 6. (citing Action Answer ¶¶ 8-10; Action Compl. ¶ 31). However, Action's claim does not rest solely on whether Gexpro provided equipment. Action alleges that Safeway "had knowledge and could reasonably anticipate that SAFEWAY's non-payment of ACTION's invoices would result in an inability of ACTION to pay for the materials supplied to SAFEWAY stores under the mandated contracts between ACTION and GEXPRO. It became substantially more expensive and more burdensome for ACTION to perform the GEXPRO contract." Action Compl. ¶ 31. To the extent more facts are required, Action states that it "could easily amend the Third Party Complaint to specify facts which set forth the increased burden and expense placed upon Action." Opp'n at 35. Such facts include: "increased financial burden placed upon Action, as Safeway apparently expected Action

to cover the costs of hundreds of dollars of Gexpro lighting materials for an indefinite amount of time; interest charged resulting from payment delays; disruption in warranty and product returns which resulted in overinflated invoice claims by Gexpro, and others." *Id.* Under the liberal pleading standard of Rule 8(a)(2), the Court finds that Action's factual allegations constitute "a short and plain statement of the claim showing that the pleader is entitled to relief," as the Court can draw the reasonable inference that Action contends that Safeway is liable for disrupting the contractual relationship between Action and Gexpro by not paying Action's invoices. *Iqbal*, 556 U.S. at 663. To the extent Safeway contends more facts are needed to flesh out this claim, such facts are easily obtained through discovery and are not required at this stage. Thus, even if Action admits it did not pay Gexpro, it has stated sufficient factual allegations to meet its pleading burden under *Iqbal*. Accordingly, Safeway's Motion to Dismiss is DENIED as to Action's intentional interference with contractual relations claim.

**B.     Fourth Cause of Action: Indemnity**

Action's fourth cause of action for express indemnity is pursuant to Section 5.1 of Action and Safeway's Master Agreement. Action Compl. ¶¶ 35-39. Section 5.1 provides:

> Safeway agrees to indemnify, defend and hold Service Contractor [Action] and its subsidiaries and its officers, directors, employees and agents (collectively, the "Service Contractor Parties"), harmless from and against any and all liabilities, claims, demands, losses, damages, costs and expenses, including, without limitation, attorneys' fees and costs (collectively "claims") arising in connection with the negligent acts or omissions by Safeway, its contractors, or its or their agents and employees, including, without limitation, claims for death or injury to any person or damage to any of Service Contractor's or its subsidiaries' property or loss of use thereof.

Master Agreement § 5.1. Action alleges that Safeway's failure to make timely payments between October and December 2014 resulted in Gexpro's claims against Action in this case. Action Compl. ¶ 37. Given this failure, Action maintains that it is entitled under Section 5.1 to contractual indemnification for all damages resulting from Safeway's non-payment. *Id.* ¶ 39.

Safeway argues that it has no obligation to indemnify Action because Gexpro's claims do not arise from any negligent act or omission by Safeway. Mot. at 9. Safeway notes that Action's Complaint alleges no negligence on its part that caused any loss to Gexpro; instead, Action alleges

7

that Safeway breached the Master Agreement by failing to pay Action, which somehow resulted in Action lacking sufficient cash flow to pay its admitted obligations to Gexpro. *Id.* (citing Action Compl. ¶ 31). Safeway argues that its alleged failure to pay Action's invoices is not "negligence" or any other potential tort, but is, at best an alleged breach of contract. *Id.* at 10. Even if the Court construes Safeway's failure to make a payment under contract as an indemnifiable negligent act or omission, Safeway argues that Action may still not seek indemnity because Section 5.1 is a general indemnity clause which does not provide for indemnification where the indemnitee is also at fault for non-payment of its debts. *Id.* Action argues that the indemnity clause is not limited to Safeway's negligent actions, but should instead be applied more generally to Safeway's tortious conduct, including its interference with contractual relations. Opp'n at 13.

The Master Agreement provides that it shall "be governed by and construed in accordance with the law of the state of California . . . ." *Id.* § 5.12. In California, "[i]ndemnity means 'the obligation resting on one party to make good a loss or damage another party has incurred.'" *Maryland Cas. Co. v. Bailey & Sons, Inc.*, 35 Cal. App. 4th 856, 864 (1995) (quoting *Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 13 Cal. 3d 622, 628 (1975)). Based on the principal that "[t]ortfeasors should bear responsibility for all the consequences of their wrongs," indemnity "is a right which inures to a person, who without active fault on their part, has been compelled by reason of some legal obligation to pay money due to the initial negligence of another." *Associated Indem. Corp. v. Pac. Sw. Airlines*, 128 Cal. App. 3d 898, 906 (1982) (citation omitted). "An indemnity agreement is to be interpreted according to the language and contents of the contract, as well as the intention of the parties as indicated by the contract, using the same rules that govern the interpretation of other contracts." *Carr Bus. Enters., Inc. v. City of Chowchilla*, 166 Cal. App. 4th 14, 20 (2008) (citations omitted).

Although Safeway focuses on the lack of a negligence claim, it is not clear that the Master Agreement's indemnity clause is so limited. The language encompasses all *claims* arising in connection with the negligent acts *or omissions* by Safeway. Master Agreement § 5.1. As the parties dispute the meaning of these terms, interpretation of the indemnity clause requires the Court to consider the parties' intentions. However, on a motion to dismiss, the Court accepts as

8

true all allegations in the complaint and views them in the light most favorable to the nonmoving party. *Manzarek*, 519 F.3d at 1031. Thus, the Court finds it prudent not to make such a determination at this stage in the proceedings.

Safeway also argues that Section 5.1 is a general indemnity clause and therefore cannot apply to claims arising from Action's failure to pay Gexpro, as Action is also at fault for non-payment of its debts. Mot. at 10. "California courts have developed certain principles of interpretation applicable specifically to indemnity agreements." *Maryland Cas. Co.*, 35 Cal. App. 4th at 866 (citation omitted). "One of those long-established principles provides that '[a]n indemnity clause phrased in general terms [e.g., one which does not mention the effect of the indemnitee's negligence] will not be interpreted . . . to provide indemnity for consequences resulting from the indemnitee's own actively negligent acts.'" *Id.* (brackets in original; quoting *Markley v. Beagle*, 66 Cal. 2d 951, 962 (1967)). Thus, "an agreement to indemnify an actively negligent indemnitee will not be implied in the absence of express and explicit language." *Id.* (citations omitted). Here, any finding as to Action's status as a negligent indemnitee would require a factual analysis as to whether Action engaged in tortious or negligent activities. As noted above, any such determination is premature at the motion to dismiss stage. *See Harara v. Conocophillips Co.*, 2005 WL 192426, at *2 (N.D. Cal. Jan. 27, 2005) (noting that "[w]hile Harara asserts that the indemnity provision does not apply to the factual circumstances here, on a motion to dismiss the court accepts as true all allegations in the complaint and views them in the light most favorable to the nonmoving party[,]" and counterclaimant had properly pled a claim for express indemnity).

Accordingly, accepting Action's factual allegations as true, and without the aid of extrinsic evidence, the Court finds that Action has properly pled a claim for express indemnity. Consequently, as the Court has not dismissed Plaintiff's express indemnity claim, the Court does not consider Safeway's Motion to Strike. *See* Mot. to Strike at 1.

///

///

///

**CONCLUSION**

Based on the analysis above, the Court **DENIES** Safeway's Motion to Dismiss.  Safeway's Motion to Strike is therefore **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated: June 2, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge